CHARLES EDEN ET AL. *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF BLOOMFIELD ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued May 7—decided June 10, 1952

*Louis W. Schaefer,* with whom, on the brief, was *Albert S. Bill,* for the appellants (defendants Nielsen).

· *Thomas J. Hagarty,* for the appellant (named defendant).

*M. J. Blumenfeld,* for the appellees (plaintiffs).

JENNINGS, J. On October 5, 1950, the defendant commission voted to change property of the individual defendants, hereinafter referred to as the Nielsens, from a residence to a business zone. The plaintiffs, nearby property owners, appealed on the ground that the commission abused its discretion. The trial court set aside the action of the commission and the defendants appealed to this court. The case raises a question of spot zoning.

The finding sets forth the facts in commendable detail, but those essential to a decision can be briefly stated. This summary includes such additional facts as the elaborate attack on the finding requires.

Bloomfield has been primarily an agricultural and dairy farming community. In recent years it has begun to develop into a residential suburban town containing many attractive homes. The town has had a zoning ordinance since 1929. Property of the Nielsens is situated on the northeast and northwest corners of the intersection of Hall Boulevard and Simsbury Road, main traffic arteries. These properties have been in a residential zone since 1929. The Nielsens have conducted a dairy as a nonconforming use

on the northeast corner. The northwest corner has been used as a pasture.

For six months prior to March 15, 1950, an expert in city planning surveyed the town. With the aid of this survey, the defendant commission prepared a comprehensive plan and set of zoning regulations for the entire town. Many changes in the 1929 plan were made. After a public hearing, the new ordinance and map were adopted on February 23, 1950, to become effective March 15, 1950. The zone of the Nielsen property was residence 20. This classification imposed greater restrictions on the use of the property than the previous one. At the public hearing on the new ordinance, one of the Nielsens stated that he did not object to the over-all plan provided his failure to object would not prejudice his right to appear before the commission on a petition for a change of zone of the northwest corner from residence 20 to business 1. The chairman assured him that he could appear.

On July 19, 1950, the Nielsens petitioned for a change of zone of the northwest corner from residence 20 to business 1. The petition was granted October 5, 1950. It was the purpose of the Nielsens to establish an ice cream bar having fifty-one stools and seven tables. The establishment of this business would increase traffic congestion, thus impairing the safety, health and general welfare of the neighborhood, and would depreciate the value of neighboring property. Maps made a part of the finding show that the intersection in question is in a strictly residential neighborhood a considerable distance from the business area and that the plaintiffs' properties are in the immediate vicinity.

On these facts the trial court concluded that the action of the commission was arbitrary, illegal and

in abuse of discretion because it constituted spot zoning, was not pursuant to a comprehensive plan and would not usefully serve the neighborhood.

Spot zoning, so-called, is not permitted. *Kuehne* v. *Town Council,* 136 Conn. 452, 460, 72 A.2d 474; note, 149 A.L.R. 292. When a zoning authority is faced with a situation involving this concept, the solution is not free from difficulty. The same is true when the case is before the courts on appeal. The history of zoning legislation, so often and so recently reviewed, indicates a clear legislative intent that, subject to certain underlying principles, the decision of such questions is for the local authority. That authority is endowed with a wide and liberal discretion. *Mallory* v. *West Hartford,* 138 Conn. 497, 505, 86 A.2d 668. The test for determining whether that discretion has been abused is similar to that employed in considering the constitutionality of a statute. "It is the court's duty in such case, in the exercise of great care and caution, to make every presumption and intendment in favor of the validity of the statute, and to sustain it unless its invalidity is beyond a reasonable doubt." *State* v. *Heller,* 123 Conn. 492, 498, 196 A. 337. A very practical reason for the wide discretion accorded the local authority is thus stated in *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538: "The circumstances and conditions in matters of zone changes and regulations are peculiarly within the knowledge of the zoning commission. Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority." See also *Parsons* v. *Wethersfield,* 135 Conn. 24, 31, 60 A.2d 771, and, by analogy, *Hoffman* v. *Kelly,* 138 Conn. 614, 619, 88 A.2d 382.

In view of these general principles, it is not surprising that the cases in which the decision of the zoning commission has been reversed because it amounted to spot zoning are so few in number. Two of them, *Kuehne* v. *Town Council,* 136 Conn. 452, 72 A.2d 474, and *Strain* v. *Mims,* 123 Conn. 275, 193 A. 754, are discussed in *Mallory* v. *West Hartford,* 138 Conn. 497, 504, 505, 86 A.2d 668. See also *Hawley* v. *Zoning Commission,* 16 Conn. Sup. 187. Even so, "zoning authorities can only exercise such power as has been validly conferred upon them by the General Assembly." Maltbie, "Legal Background of Zoning," 22 Conn. B. J. 2; see *Kamerman* v. *LeRoy,* 133 Conn. 232, 236, 50 A.2d 175. Their authority is found in General Statutes, § 837, in compliance with which the Bloomfield ordinance was adopted. Section 837 requires that zoning regulations must be made "in accordance with a comprehensive plan" and enumerates the purposes for which they may be adopted. Spot zoning has been defined as "a provision in a zoning plan or a modification in such a plan, which affects only the use of a particular piece of property or a small group of adjoining properties and is not related to the general plan for the community as a whole." Maltbie, supra, p. 5. Or, as is stated in *Linden Methodist Episcopal Church* v. *Linden,* 113 N.J.L. 188, 191, 173 A. 593, it is an "attempt to wrench a single small lot from its environment and give it a new rating that disturbs the tenor of the neighborhood." The action of the defendant commission was in exact accordance with these definitions.

This conclusion is not at variance with those reached in our cases. For example, in *Kutcher* v. *Town Planning Commission,* supra, the creation of a small industrial zone in one entitled "rural residence" was found to be in accordance with a comprehensive plan

for the zoning of the entire town. The original zoning ordinance established ten similar zones where industry already existed. Had the intent been to maintain the area for rural residence, these small industrial islands would have been left as nonconforming uses. See also *Bartram* v. *Zoning Commission,* 136 Conn. 89, 68 A.2d 308; *Parsons* v. *Wethersfield,* supra.

The task confronting zoning authorities when an attempt is made "to wrench a single small lot from its environment and give it a new rating" may, as stated above, be difficult, but is not beyond their capabilities. Such applications should be regarded with suspicion and should be denied unless the applicants can prove to the authority's satisfaction that the change requested will conform to a comprehensive plan and will serve one or more of the purposes enumerated in the statute. *Bartram* v. *Zoning Commission,* supra, 93. "[T]he controlling test must be, not the benefit to a particular individual or group of individuals, but the good of the community as a whole. . . ." *Kuehne* v. *Town Council,* supra, 461. The petition in the case at bar does not satisfy these conditions. The action of the commission was spot zoning. The decision of the court was correct.

In view of this conclusion, the claim of the plaintiffs that the commission was impotent to change its decision because of its former ruling is not discussed. The statement of the chairman at the hearing on the revised ordinance that the Nielsens could apply at any time for a change of zone created no rights in them beyond those enjoyed by citizens at large. See *Grady* v. *Katz,* 124 Conn. 525, 531, 1 A.2d 137; *Thayer* v. *Board of Appeals,* 114 Conn. 15, 21, 157 A. 273.

There is no error.

In this opinion the other judges concurred.